**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel*. ROBERT PARKER and THOMAS SCHEER, MD,

Plaintiffs/Relators,

v.

SPACE COAST MEDICAL ASSOCIATES, L.L.P., DR. CYNTHIA JEAN BRYANT, and BREVARD HEMATOLOGY AND ONCOLOGY CONSULTANTS - LEVINE, ZIMM AND SPRAWLS, M.D., P.A. aka SPACE COAST CANCER CENTER,

Defendants.

Case No.: 6:13-CV-1068-ORL-22TBS

**RELATORS' OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS RELATORS' SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Relators, Robert Parker and Dr. Thomas Scheer, respectfully submit this response in opposition to Defendants' Consolidated Motion to Dismiss Relators' Second Amended Complaint (hereinafter "Motion to Dismiss") (Doc. No. 65) and request this Court to deny the Motion to Dismiss based on Relators' incorporated memorandum of law.

**MEMORANDUM OF LAW**

## I. INTRODUCTION

Relators Robert Parker and Dr. Thomas Sheer (collectively referred to as "Relators") filed the Second Amended Complaint ("SAC") (Doc. No. 61) against Space Coast Medical Associates, L.L.P., Dr. Cynthia Jean Bryant (individually referred to as "Dr.

Bryant", and Defendants Brevard Hematology and Oncology Consultants – Levine, Zimm and Sprawls, M.D., P.A. (collectively referred to as "Space Coast Cancer Center") to expose a serious danger to public health as well as violations of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the Florida False Claims Act, Fla. Stat. § 68.081, *et seq*. (jointly referred to as the "False Claims Act") (SAC ¶ 1). Despite the fact that radiation therapy carries significant risk of radiation overdose that may cause organ failure or death (SAC ¶ 46), Space Coast Cancer Center's standard practice was to simultaneously perform high-energy radiation treatment[1] on cancer patients at their Titusville and Viera Offices with only one radiation oncologist available to supervise both locations (SAC ¶¶ 49-52, 101-130) and to routinely perform such treatment without first ensuring that the cancer patients' treatment plans were verified by a radiation oncologist (SAC ¶¶ 79-90) and without first ensuring that a medical physicist performed a quality assurance evaluation (SAC ¶¶ 91-100).

Space Coast Cancer Center's performance of radiation treatment without proper supervision (SAC ¶¶ 101-130), delivery of radiation treatment based on unverified radiation treatment plans (SAC ¶¶ 79-90), and delivery of radiation treatment without first performing quality assurance evaluations (SAC ¶¶ 91-100) all constitute violations of Medicare's conditions of payment and have resulted in numerous False Claims Act violations relating to Space Coast Cancer Center's billing of the Medicare Program, the Medicaid Program, and the TRICARE Program (collectively referred to as the

[1] The specific forms of radiation treatment involved in this case are Intensity Modulated Radiation Therapy ("IMRT"), Stereotactic Body Radiation Therapy ("SBRT"), Stereotactic Radiosurgery ("SRS"), and Three-Dimensional Conformal Radiation Therapy ("3D-CRT"). (SAC ¶ 60.)

"Government Healthcare Programs")[2] (SAC ¶¶ 142-217). The Second Amended Complaint is based on the firsthand knowledge of Relator Parker, the lead radiation therapist for Space Coast Cancer Center's Viera Office from June of 2011 until October of 2013 (SAC ¶¶ 6, 53, 134) as well as the firsthand knowledge of Relator Dr. Sheer, a licensed radiation oncologist who substituted for Space Coast Cancer Center's sole radiation oncologist in July of 2013 (SAC ¶¶ 7, 55, 131).

## II. LEGAL STANDARD

"When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs." White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999) "At the pleading stage, a complaint alleging violations of the FCA must satisfy two pleading requirements." U.S. ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1222 (11th Cir. 2012)

"First, the complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. (*quoting* Fed. R. Civ. P. 8(a)(2)). "A complaint cannot merely recite the elements of a cause of action but must contain factual allegations sufficient to raise the right to relief above the speculative level." Id. "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)

---

[2] Reimbursement under Medicaid and TRICARE is modeled after Medicare. (SAC ¶¶ 34-40, 43.)

"Second, a complaint must comply with Rule 9(b)'s heightened pleading standard, which requires a party to 'state with particularity the circumstances constituting fraud or mistake.'" Matheny, 671 F.3d at 1222 (*quoting* Fed. R. Civ. P. 9(b)). "The particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Id. (*quoting* Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir.2009)).

## III. RESPONSE TO ARGUMENTS

### A. Counts I Through IV Properly Allege that Claims Presented to the Government Were Actually False

The Motion to Dismiss first argues that Counts I through IV of the Second Amended Complaint do not plausibly allege that any claim presented to the government was actually false. (Mot. to Dismiss 5-14.) Counts I through IV[3] allege that Space Coast Cancer Center falsely certified compliance with Medicare rules and regulations on the Medicare Enrollment Form, Form CMS-855I, as well as the specific CMS-1500 claim forms that Space Coast Cancer Center submitted to the Medicare administrator, First Coast Service Options. (SAC ¶¶ 28-33, 143, 153, 162, 172.) As previously stated, Space Coast Cancer Center's performance of radiation treatment without proper supervision (SAC ¶¶ 101-130), delivery of radiation treatment based on unverified radiation treatment plans (SAC ¶¶ 79-90), and delivery of radiation treatment without first

[3] Counts III and IV are directed solely at Dr. Bryant of Space Coast Cancer Center, but this distinction is immaterial for the purpose of responding to the argument that Counts I through IV do not plausibly allege that any claim presented to the government was actually false (Mot. to Dismiss 5-14).

performing quality assurance evaluations (SAC ¶¶ 91-100) all constitute violations of Medicare's conditions of payment and have resulted in numerous False Claims Act violations relating to Space Coast Cancer Center's billing of the Government Healthcare Programs (SAC ¶¶ 142-217).

Concerning Space Coast Cancer Center's delivery of radiation treatment without first performing quality assurance evaluations (SAC ¶¶ 91-100), the Second Amended Complaint specifically references the following email dated February 20, 2013 from Space Coast Cancer Center's medical physicist in which the medical physicist admits that Patient N, a Medicare patient, was treated prior to his performance of a quality assurance evaluation:

> We need to talk about SBRT new starts when [Dr. Bryant] gets back. [Patient N] was treated before I analyzed his QA. This shouldn't happen. When I looked at his plans, one of them was really off, and I got really scared we had all screwed up. Luckily, I re-exported the plan, and it was OK, but what if it hadn't been?!? We're talking a total of 17 Gy between his two plans[.]

(SAC ¶¶ 92-93.) The Second Amended Complaint also clearly alleged that Space Coast Cancer Center's delivery of radiation treatment without first performing quality assurance evaluations violates First Coast Service Options' LCD L30366's requirement that the "medical physicist must evaluate the technical aspects of the treatment[.]"(SAC ¶¶ 95-96.)

Concerning Space Coast Cancer Center's delivery of radiation treatment based on unverified radiation treatment plans (SAC ¶¶ 79-90), the Second Amended Complaint specifically references the following email dated April 24, 2013 from Space Coast Cancer Center's lead radiation therapist for the Titusville Office to Dr. Bryant that

included a list of patients that were "currently under treatment with unapproved Radiation Treatment Plans" including at least one Medicare patient, Patient C, that was undergoing IMRT. (SAC ¶¶ 80-81.) The Second Amended Complaint also clearly alleged that Space Coast Cancer Center's delivery of radiation treatment based on unverified radiation treatment plans violates the requirement of First Coast Service Options' LCD L29200 that Space Coast Cancer Center's sole radiation oncologist, Dr. Bryant, must develop and approve a radiation treatment plan prior to delivering IMRT.

Concerning Space Coast Cancer Center's performance of radiation treatment without proper supervision (SAC ¶¶ 101-130), the Second Amended Complaint provided the following specific examples of Medicare patients treated without proper supervision: (1) Patient N was treated with SBRT on March 6, 2013 at the Titusville Office when Dr. Bryant was absent from the Titusville Office (SAC ¶ 117); and (2) Patient P was treated with SRS on March 13, 2013 at the Titusville Office when Dr. Bryant was absent from the Titusville Office. (SAC ¶ 118). The Second Amended Complaint also clearly alleged that Space Coast Cancer Center's performance of radiation treatment without proper supervision violates Medicare requirements under Chapter 15, Section 90 of the Medicare Benefit Policy Manual that radiation therapy services (including IMRT, SBRT, SRS, and 3D-CRT) must be directly supervised by a physician (SAC ¶¶ 105-106) that is qualified to "take over performance of a procedure" and, if necessary, "to change a procedure or the course of treatment being provided to a particular patient," as required under 74 Fed. Reg. 60316, 60584 (SAC ¶ 112). As alleged in the Second Amended Complaint, the non-radiation oncologists present in the building in which radiation treatment was being

performed were clinically inappropriate to provide supervision of the above-described forms of radiation treatment delivery, did not provide clinically appropriate supervision, and were not routinely informed which patients were receiving radiation treatment delivery at any given time. (SAC ¶¶ 113-114.)

Furthermore, Space Coast Cancer Center falsely claimed on page 11 of the Motion to Dismiss that Image Guided Radiation Therapy ("IGRT")[4] is "not at issue" in this case (Mot. to Dismiss 11) despite the fact that the Second Amended Complaint clearly alleges numerous False Claims Act violations regarding IGRT (SAC ¶¶ 143(c), 143(j), 153(c), 153(j), 162(c), 162(j), 172(c), 172(j), 181(d), 190(d)). The most glaring IGRT-related violations concern Space Coast Cancer Center's failure to directly supervise IGRT procedures that were performed as a component of SBRT and SRS (*see* SAC ¶¶ 143(c), 153(c), 162(c), 172(c)) based on the following facts:

(a) Given that Space Coast Cancer Center only has one radiation oncologist to cover concurrent radiation therapy procedures occurring at both the Titusville and Viera Offices, 50% of all SBRT and SRS procedures are performed when there is no radiation oncologist present (SAC ¶¶ 52, 60, 101);

(b) The Second Amended Complaint provided the following specific examples of Space Coast Cancer Center' patients that were billed for unsupervised SBRT procedures: Patient N, a Medicare patient, who was treated on March 6, 2013 at

[4] IGRT "is a form of adaptive radiation therapy, which utilizes imaging technology to guide action that modifies the treatment in reference to the intended target....IGRT is used in patients whose tumors are directly adjacent to critical structures and where conventional means of targeting are deemed to be inadequate." (SAC ¶ 119, *citing* First Coast Service Options LCD L29200.)

the Titusville Office when Dr. Bryant was absent from the Titusville Office, as well as Patient O who was treated on May 28, 2013 at the Viera Office when Dr. Bryant was absent from the Viera Office. (SAC ¶ 117.)

(c) The Second Amended Complaint also provided the following specific examples of Space Coast Cancer Center's patients that were billed for unsupervised SRS procedures: Patient P, a Medicare patient, who was treated on March 13, 2013 at the Titusville Office when Dr. Bryant was absent from the Titusville Office, as well as Patient Q who was treated on June 19, 2013 at the Titusville Office when Dr. Bryant was absent from the Titusville Office. (SAC ¶ 118.)

(d) IGRT is a component of SBRT and SRS that cannot be billed for separately. (SAC ¶ 120);

(e) Space Coast Cancer Center routinely performed IGRT procedures without the direct supervision of a radiation oncologist (SAC ¶¶ 124-128); and

Medicare "mandates radiation oncology supervision" for IGRT as admitted to by Space Coast Cancer Center (Mot. to Dismiss 15).

Although Space Coast Cancer Center had an internal policy of not billing for unsupervised IGRT procedures as *separate* billable procedures (SAC ¶¶ 124-126), Space Coast Cancer Center regularly billed for SBRT and SRS procedures (SAC ¶¶ 52, 60, 101) of which unsupervised IGRT procedures were *component* procedures (SAC ¶ 120).

**B. Relators' Allegations Show Claims for Payment Were "Knowingly" False**

The Motion to Dismiss next argues that the Second Amended Complaint does not show that any claims for payment were "knowingly" false. (Mot. to Dismiss 14-16.) All of the False Claims Act violations alleged in the Second Amended Complaint were based on allegations that one or more of the defendants *knowingly* committed the acts subject to False Claims Act liability. (SAC ¶¶ 142-217)

"The False Claims Act does not require proof of specific intent to defraud; instead, it defines the terms 'knowing' and 'knowingly' to mean that a person: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." U.S. ex rel. Gillespie v. Kaplan Univ., No. 09-20756-CIV, 2013 WL 3762445, at *6 (S.D. Fla. July 16, 2013) (*citing* 31 U.S.C. § 3729(b)(1)) Furthermore, "[a]t the pleading stage, 'knowledge, and other conditions of a person's mind may be alleged generally.'" Matheny, 671 F.3d at 1224 (*quoting* Fed.R.Civ.P. 9(b)).

As previously stated, Space Coast Cancer Center's performance of radiation treatment without proper supervision (SAC ¶¶ 101-130), delivery of radiation treatment based on unverified radiation treatment plans (SAC ¶¶ 79-90), and delivery of radiation treatment without first performing quality assurance evaluations (SAC ¶¶ 91-100) all constitute violations of Medicare's conditions of payment and have resulted in numerous False Claims Act violations relating to Space Coast Cancer Center's billing of the Government Healthcare Programs (SAC ¶¶ 142-217).

Space Coast Cancer Center possessed, at least, constructive knowledge of the falsity of the claims regarding the delivery of radiation treatment without first performing quality assurance evaluations given that Space Coast Cancer Center acted with reckless disregard for First Coast Service Options' LCD L30366's requirement that the "medical physicist must evaluate the technical aspects of the treatment,"(SAC ¶¶ 95-96). Furthermore, Space Coast Cancer Center had actual knowledge that it was delivering radiation treatment without first performing quality assurance evaluations based on the email of Space Coast Cancer Center's medical physicists documenting that Patient N, a Medicare patient, was undergoing SBRT prior to a quality assurance evaluation by the medical physicist. (SAC ¶¶ 92-93.)

Space Coast Cancer Center possessed, at least, constructive knowledge of the falsity of the claims regarding the delivery of radiation treatment on patients with unverified radiation treatment plans given that Space Coast Cancer Center acted with reckless disregard for First Coast Service Options' LCD L29200's requirement that Space Coast Cancer Center's sole radiation oncologist, Dr. Bryant, develop and approve a radiation treatment plan prior to delivering radiation treatment (specifically, IMRT). Furthermore, Space Coast Cancer Center had actual knowledge that it was delivering radiation treatment on patients with unverified radiation treatment plans based on the email from Space Coast Cancer Center's lead radiation therapist for the Titusville Office to Dr. Bryant that included a list of patients that were "currently under treatment with unapproved Radiation Treatment Plans"(including at least one Medicare patient, Patient C, that was undergoing IMRT), to which Dr. Bryant promptly reprimanded the lead

radiation therapist for creating a list of patients undergoing treatment without an approved radiation treatment plan. (SAC ¶¶ 80-81.)

Space Coast Cancer Center possessed, at least, constructive knowledge of the falsity of the claims regarding the performance of radiation treatment without proper supervision given that Space Coast Cancer Center acted with reckless disregard for the Medicare requirements under Chapter 15, Section 90 of the Medicare Benefit Policy Manual that radiation therapy services (including IMRT, SBRT, SRS, and 3D-CRT) must be directly supervised by a physician (SAC ¶¶ 105-106) that is qualified to "take over performance of a procedure" and, if necessary, "to change a procedure or the course of treatment being provided to a particular patient," as required under 74 Fed. Reg. 60316, 60584 (SAC ¶ 112). As alleged in the Second Amended Complaint, the non-radiation oncologists present in the building in which radiation treatment was being performed were clinically inappropriate to provide supervision of the above-described forms of radiation treatment delivery, did not provide clinically appropriate supervision, and were not routinely informed which patients were receiving radiation treatment delivery at any given time. (SAC ¶¶ 113-114.) Additionally, Space Coast Cancer Center's act of falsely listing their sole radiation oncologist, Dr. Bryant, as both the primary oncologist and covering oncologist on the documentation justifying all radiation treatment delivery procedures regardless of whether Dr. Bryant is actually in the facility in which the radiation treatment delivery procedures occurred (SAC ¶ 115) implies that Space Coast Cancer Center possessed actual knowledge of the impropriety of performing radiation treatments such as IMRT, SBRT, SRS, and 3D-CRT without proper supervision.

Furthermore, Space Coast Cancer Center possessed actual knowledge that it was performing SBRT and SRS procedures (SAC ¶¶ 52, 60, 101) of which unsupervised IGRT procedures were component procedures (SAC ¶ 120) based on the admission of Space Coast Cancer Center that Medicare "mandates radiation oncology supervision" for IGRT (Mot. to Dismiss 15). Although Space Coast Cancer Center had an internal policy of not billing for unsupervised IGRT procedures as separate billable procedures (SAC ¶¶ 124-126), Space Coast Cancer Center regularly billed for SBRT and SRS procedures (SAC ¶¶ 52, 60, 101) of which unsupervised IGRT procedures were component procedures (SAC ¶ 120). Under Rule 9(b)'s standards, these allegations of knowledge are sufficient.

**C. Counts I Through IV Properly Allege With Sufficient Particularity that False Claims Were Presented to the Government**

The Motion to Dismiss next argues that Counts I through IV of the Second Amended Complaint fail to allege with sufficient particularity that false claims were presented to the government. (Mot. to Dismiss 16-23.) "Generally, in order to plead the submission of a false claim with particularity, 'a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result.'" United States v. All Children's Health Sys., Inc., No. 8:11-CV-1687-T-27EAJ, 2013 WL 1651811, at *2 (M.D. Fla. Apr. 16, 2013) (*quoting* Matheny, 671 F.3d at 1225). Relators concede that the Eleventh Circuit generally applies Rule 9(b) in a rigid manner concerning causes of action under Section 3729(a)(1)(A) of the False Claims Act, which imposes liability on "any person who ... knowingly presents, or causes to be presented, a

false or fraudulent claim for payment or approval." *See* Hopper, 588 F.3d at 1326 (holding that a relator must plead a specific false claim to avoid dismissal of a claim under 31 U.S.C. § 3729(a)(1)(A)).

However, Space Coast Cancer Center failed to mention that there are exceptions to this general rule and the Eleventh Circuit has not consistently adhered to this rigid understanding of Rule 9(b). In fact, the Eleventh Circuit has allowed *qui tam* complaints to proceed notwithstanding relators' failure to identify specific fraudulent claims for payment submitted to the government. *See* United States ex rel. Walker v. R&F Props. of Lake Cnty., Inc., 433 F.3d 1349, 1360 (11th Cir. 2005); *see also* United States ex rel. Clausen v. Laboratory Corp. of Am., 290 F.3d 1301, 1311 (11th Cir. 2002) (stating that a *qui tam* complaint must contain "some indicia of reliability…to support the allegation of *an actual false claim* for payment").[5]

Relators sufficiently alleged that Space Coast Cancer Center presented a CMS-1500 claim form to Medicare concerning Patient N for SBRT using CPT Code 77373 for $1,229.51 per session of treatment delivery (SAC ¶¶ 70, 92-96, 141(c)), which included

[5] Furthermore, the per se rule argued for by Space Coast Cancer Center is unsupported by Rule 9(b). Although a plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), several courts of appeals have correctly recognized that pleading the details of a specific false claim presented to the government is not an indispensable requirement of a viable FCA complaint. Even at trial, "a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted." United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009). To demand those details to survive a motion to dismiss is "significantly more than any federal pleading rule contemplates." Id. Accordingly, several courts in other circuits have held that a relator's complaint satisfies Rule 9(b) if it "alleg[es] particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id.; *see* Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998-99 (9th Cir. 2010); U.S. ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009)

an implied false certification of compliance with First Coast Service Options' LCD L30366, which requires that the "medical physicist must evaluate the technical aspects of the treatment" (SAC ¶¶ 70, 92-96, 141(c)) despite the fact that the medical physicist clearly failed to comply with this standard based on the following email dated February 20, 2013 from Space Coast Cancer Center's medical physicist in which the medical physicist admits that Patient N was treated prior to the medical physicist's performance of a quality assurance evaluation:

> We need to talk about SBRT new starts when [Dr. Bryant] gets back. [Patient N] was treated before I analyzed his QA. This shouldn't happen. When I looked at his plans, one of them was really off, and I got really scared we had all screwed up. Luckily, I re-exported the plan, and it was OK, but what if it hadn't been?!? We're talking a total of 17 Gy between his two plans[.]

(SAC ¶¶ 92-93). Shortly after this email, Relator Parker held a conversation with Sondra Beausang (hereinafter "Ms. Beausang"), Space Coast Cancer Center's Radiation Oncology Billing Coordinator, during which she confirmed that Space Coast Cancer Center presented the above-described claim to Medicare. (SAC ¶ 141(c).)

Besides the aforementioned example of Patient N, however, the Eleventh Circuit's generally rigid application of Rule 9(b) should not be applied as to the other false claims alleged in this particular case due to Relators' firsthand knowledge of the fraudulent conduct (SAC ¶¶ 53-57, 131-140) as well as the fact that the information needed to more particularly plead Space Coast Cancer Center's presentment of false claims to the Government Healthcare Programs is exclusively in the hands of Ms. Beausang of Space Coast Cancer Center, depriving Relators of the ability to plead with greater particularity.

"[T]o rely on the assertion that the information is exclusively in the hands of the defendant requires a relator to set forth a detailed factual basis for that belief[.]" U.S. ex rel. Keeler v. Eisai, Inc., 568 F. App'x 783, 803 (11th Cir. 2014) The Second Amended Complaint meets this standard by setting forth a detailed factual basis for Relators' belief based on firsthand knowledge that the presentment information is exclusively in the hands of Sondra Beausang of Space Coast Cancer Center. As alleged in the Second Amended Complaint, Space Coast Cancer Center utilizes a two part billing system in which Relator Parker and other radiation therapists entered the CPT codes into the locally based ARIA EMR system, which is exported from ARIA using the HL7 electronic health information framework and then imported to Centricity for final processing and bill creation by a single individual, Sondra Beausang of Space Coast Cancer Center. (SAC ¶¶ 135-137.) Notably, Relator Parker and the lead radiation therapist for the Titusville Office were responsible for reviewing and approving claims to be submitted to the government prior to forwarding the claims to Ms. Beausang for final processing and submission using the cloud-based Centricity billing system. (SAC ¶ 138.) Ms. Beausang would then engage in the actual submission of claims to the patients' government and private insurance providers listed in Space Coast Cancer Center' electronic medical records system according to the CPT code previously inputted by Relator Parker and other therapists. (SAC ¶ 139.) Based on Relator Parker's experience with Space Coast Cancer Center' electronic medical records system, including the "Insurance Page" for each patient, which identifies the patients' primary insurance coverage, Relator Parker estimates that of Space

Coast Cancer Center' total number of external beam radiation[6] patients, 64% utilize the Medicare Program as their primary insurance coverage, 8% utilized the Medicaid Program as their primary insurance coverage, and 8% utilize the TRICARE Program as their primary insurance coverage. (SAC ¶ 140.)

Furthermore, overwhelming indicia of reliability that Space Coast Cancer Center submitted or caused to be submitted false CMS-1500 claim forms to Government Healthcare Programs concerning the aforementioned schemes based on the following:

(a) Relator Parker's personal understanding of Space Coast Cancer Center' billing practice, which consists of Ms. Beausang's submission of claim forms to contractors or carriers of Government Insurance Programs based on the primary insurance coverage listed in Space Coast Cancer Center' electronic medical records system and the procedural codes inputted into Space Coast Cancer Center' electronic medical records system by Relator Parker and other therapists;

(b) Relator Parker's act of reviewing and approving claims as the lead radiation therapist at the Viera Office and then forwarding the claims to Ms. Beausang for final submission;

[6] The specific forms of external beam radiation involved in this case are Intensity Modulated Radiation Therapy ("IMRT"), Stereotactic Body Radiation Therapy ("SBRT"), Stereotactic Radiosurgery ("SRS"), and Three-Dimensional Conformal Radiation Therapy ("3D-CRT"). (SAC ¶ 60.) Of the approximately 250 new external beam radiation patients per year, Relator Parker estimates that approximately 62% are prescribed Intensity Modulated Radiation Therapy ("IMRT"), approximately 30% are prescribed Three-Dimensional Conformal Radiation Therapy ("3D-CRT"), approximately 7% are prescribed Stereotactic Body Radiation Therapy ("SBRT"), and approximately 1% are prescribed Stereotactic Radiosurgery ("SRS"). (SAC ¶ 61.)

(c) Relator Parker's conversation with Ms. Beausang, shortly after the aforementioned email regarding Medicare Patient N, in which Ms. Beausang confirmed that she billed Medicare for Patient N;

(d) Relator Parker's multiple conversations with Ms. Beausang (commencing on Relator's first week of employment) in which Ms. Beausang directly informed Relator Parker that she submitted claims to Government Insurance Programs for IMRT, 3D-CRT, SBRT, and SRS on behalf of Space Coast Cancer Center despite the absence of a radiation oncologist in the building during these radiation therapy procedures; and

(e) Relator Scheer's review of Dr. Bryant's patients' charts and schedules while he was substituting for Dr. Bryant as a *locum tenens* physician at two of Space Coast Cancer Center' office locations, which revealed that Space Coast Cancer Center was billing for radiation therapies delivered when a radiation oncologist was not in the office to supervise the treatments.

(SAC ¶ 141.)

Finally, the False Claims Act's effectiveness as a tool to combat fraud against the government would be undermined if Space Coast Cancer Center were permitted to avoid accountability under Section 3729(a)(1)(A) of the False Claims Act simply by separating employees like the Relators who are most aware of Space Coast Cancer Center's fraudulent conduct from the final stage of billing.[7]

---

[7] A rigid rule that such complaints are inadequate would hinder the ability of *qui tam* relators to perform the role that Congress intended them to play in the detection and remediation of fraud against the United States. Because a prospective relator is unlikely

**D. Counts V and VI Properly Allege the Submission of False Statements Material to False Claims**

The Motion to Dismiss next argues that Counts V and VI of the Second Amended Complaint fail to allege plausibly or particularly the submission of false statements material to false claims (Mot. to Dismiss 23-24.) Section 3729(a)(1)(B) imposes liability on "any person who ... knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Space Coast Cancer Center's argument that "Relators have not pleaded adequately that false claims were **submitted** to the government" (Mot. to Dismiss 24, *emphasis added*) is fundamentally flawed because 'submission to the government' is not a pleading requirement for Section 3729(a)(1)(B) due to the fact that 3729(a)(1)(B) "does not contain a presentment clause." *See* Hopper, 588 F.3d at 1327; *see also* U.S. ex rel. Graves v. Plaza Med. Centers Corp., No. 10-23382-CIV, 2014 WL 5040284, at *4 (S.D. Fla. Oct. 8, 2014) ("The Eleventh Circuit has held that subsection (a)(2) of the False Claims Act, now section (a)(1)(B), does not require specific claims submissions" to satisfy the particularity requirements of 9(b)).

---

to be privy to such details unless she "works in the defendant's accounting department," a rule demanding the details of specific false claims would "take[] a big bite out of *qui tam* litigation." Lusby, 570 F.3d at 854. Furthermore, the government rarely needs a relator's assistance to identify claims for payment that have been submitted to the government. Rather, relators typically contribute to the government's enforcement efforts by bringing to light other information that shows those claims to be false. Requiring *qui tam* complaints to identify specific false claims thus would not meaningfully assist the government's enforcement efforts. To the contrary, the likely effect of such a requirement would be to discourage the filing of *qui tam* suits by relators who would otherwise have the means and the incentive to expose frauds against the government.

**E. Counts VII And VIII Properly Allege Reverse False Claims**

The Motion to Dismiss next argues that Counts VII and VIII of the Second Amended Complaint fail to allege plausibly or particularly the existence of reverse false claims. (Mot. to Dismiss 24-25.) "To establish a reverse false claim, a relator must prove: (1) a false record or statement; (2) the defendant's knowledge of the falsity; (3) that the defendant made, used, or causes to be made or used a false statement or record; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) the materiality of the misrepresentation." Matheny, 671 F.3d at 1222. Furthermore, "a reverse false claim action, presentment of a false claim is not at issue and presentment of a false statement is not required by the statute and thus, does not need to be pled." Id. at 1224 n.12.

As discussed above, Relators sufficiently pled the first three elements of a reverse false claim, i.e., the existence of false records and statements, Space Coast Cancer Center's knowledge of the falsity, and that those records and statements were used. Relators also sufficiently pled the fifth element of a reverse false claim regarding the materiality of the above discussed statements. (SAC ¶¶ 192, 212.)

As to the fourth element of a reverse false claim, Relators were required to show that Space Coast Cancer Center owed an obligation to pay money to the Government at the time of the allegedly false statements. *See* id. "[T]he term 'obligation' means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. §

3729(b)(3) The obligation alleged in the Second Amended Complaint was the obligation "to pay back the overpayment within 60 days" (SAC ¶¶ 199, 209) as set forth in the applicable Medicare regulation.[8] In other words, the reverse false claims alleged in the Second Amended Complaint are based on the premise that Space Coast Cancer Center failed to return overpayments within the 60-day timeframe set forth in the applicable Medicare regulations, which is a proper basis for pleading reverse false claims. *C.f.* U.S. ex rel. Willis v. Angels of Hope Hospice, Inc., No. 5:11-CV-041 MTT, 2014 WL 684657, at *12 (M.D. Ga. Feb. 21, 2014)

## IV. CONCLUSION

For the foregoing reasons, Defendants' Consolidated Motion to Dismiss Relators' Second Amended Complaint (Doc. No. 65) should be denied.

Dated: November 28, 2014

*s/ Colin M. Campbell*
Colin M. Campbell
Florida Bar No.: 0083802
Co-Counsel for Relators
Campbell Law P.A.
1980 N Atlantic Ave Ste 607
Cocoa Beach, FL 32931
Phone: 407.900.4004
Fax: 407.477.4144
service@campbellpa.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed a copy of the foregoing on November 28, 2014 with the Clerk of the Court by using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

*s/ Colin M. Campbell*
Colin M. Campbell, Esq.

[8] 42 U.S.C. § 1320a-7k(d) is the citation of the applicable Medicare regulation.