**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel.* ROBERT PARKER, *et al.*,**

**Plaintiffs/Relators,**

**Case No.: 6:13-CV-1068-ORL-22TBS**

**v.**

**SPACE COAST MEDICAL ASSOCIATES, L.L.P., *et al.*,**

**Defendants.**
_______________________________________/

**REPLY IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS RELATORS' SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Brian Newman (FBN: 004758)
William D. Horgan (FBN: 176877)
PENNINGTON, P.A.
215 S. Monroe Street, 2nd Floor (32301)
P.O. Box 10095 (32302-2095)
Tallahassee, FL
Telephone: (850) 222-3533
Fax: (850) 222-2126
bnewman@penningtonlaw.com
whorgan@penningtonlaw.com

-and-

Mark D. Colley (*pro hac vice*)
Alan E. Reider (*pro hac vice*)
Murad Hussain (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Fax: (202) 942-5999
Mark.Colley@aporter.com
Alan.Reider@aporter.com
Murad.Hussain@aporter.com

***Counsel for Defendants Space Coast Medical Associates, L.L.P., Dr. Cynthia Jean Bryant, and Brevard Hematology and Oncology Consultants – Levine, Zimm, and Sprawls, M.D., P.A. aka Space Coast Cancer Center***

## I. THE COMPLAINT DOES NOT ALLEGE ANY VIOLATION OF A CONDITION OF PAYMENT, OR A KNOWINGLY FALSE CLAIM OR STATEMENT.

Relators' false claims allegations rest on a theory of "legal falsity": that Defendants violated Medicare's conditions of payment, and then falsely certified compliance with those conditions. (*See* Relators' Opp'n to Defs.' Mot. to Dismiss ("Opp'n") (Doc. 68) at 5; *see also* Defs.' Mot. to Dismiss ("Defs.' Mot.") (Doc. 65) at 5-6.) The legal foundations for the Second Amended Complaint ("SAC" or "the Complaint"), however, are demonstrably wrong. Relators ignore the actual text of regulatory authorities, particularly the two Local Coverage Determinations ("LCDs") that define the conditions of payment for the relevant treatments: LCD L29200 for Intensity Modulated Radiation Therapy ("IMRT"), and LCD L30366 for Stereotactic Body Radiation Therapy ("SBRT") and Stereotactic Radiosurgery ("SRS"). (*See generally* Defs.' Mot. at 6-7 (discussing LCDs); *id.*, Ex. A (LCD L29200); *id.*, Ex. B (LCD L30366).)

Some of the alleged conditions of payment do not exist in the regulatory text, and the rest are inapplicable to the facts alleged. Relators' opposition does not address any of Defendants' arguments, but instead merely reiterates the Complaint's alleged legal conclusions about regulatory requirements. Those legal conclusions "lack[] factual content and, therefore, can offer no factual content in support of the complaint." *Hitchcock v. Scipione*, No. 8:13-CV-2581, 2013 WL 6184037, at *1 (M.D. Fla. Nov. 25, 2013). Given the absence of any violation of an actual condition of payment, Relators' *factual* allegations, even when taken as true, do not allege the existence of any "legally false" claim.[1]

[1] Relators correctly note that the defendant's *presentment* of a false claim is not an element of false statement liability under 31 U.S.C. § 3729(a)(1)(B). (Opp'n at 18.) This argument is misleading. Subsection (a)(1)(B) still requires the *existence* of false claims that were paid, even if the claims were *presented* to the government by someone other than the defendant. *See U.S. ex rel. Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009) (requiring particular allegations that false statement "caused the government to actually pay a false claim").

**A. IMRT Condition of Payment: Documenting Treatment Plan "Approval"**

Relators' opposition argues that the Complaint "clearly alleged" that Defendants' "delivery of radiation treatment based on unverified radiation treatment plans violates the requirement of First Coast Service Options' LCD L29200 that Space Coast Cancer Center's sole radiation oncologist, Dr. Bryant, must develop ***and approve*** a radiation treatment plan ***prior to delivering*** IMRT." (Opp'n at 6 (emphases added).) Relators do not, however, rebut Defendants' explanations for why these allegations do not plead the violation of a condition of payment. (*See* Defs.' Mot. at 7-14.) Instead, Relators continue to equate an approved treatment plan's "development" with its formally documented "approval" or "verification." Relators' confusion obscures that, while a radiation oncologist must obviously "develop" her treatment plan before delivering that treatment, the LCD does not require her to *document* her "approval" of that plan before delivering treatment.

To be clear: the Complaint does *not* allege that Dr. Bryant did not "develop" the cited treatment plans, nor does it allege that the plans were never approved. It alleges only that Dr. Bryant, on unspecified occasions, did not formally document her "approval" of those plans prior to treatment. Yet, ***no such documentation is required before treatment commences***.

LCD L29200 explains that the "plan" for IMRT is "a separate and distinct step in the process of care whose product is the computerized plan developed by the physician, medical physicist and dosimetrist," and has its own distinct billing code. (Defs.' Mot., Ex. A at 3.) As a condition of paying claims for the separate work of developing a treatment plan, the LCD requires that the radiation oncologist document and sign her approval of the plan that she developed. (*See id.*) The LCD does not say that this documentation step must be completed before treatment *delivery*. Relators' opposition offers no legal authority to suggest otherwise, and so they cannot show any false claim. *See, e.g.*, *United States v. Prabhu*, 442 F. Supp. 2d

1008, 1032 (D. Nev. 2006) (holding that Medicare claims submitted by defendants "cannot be false, as a matter of law, because . . . the Government has not established any violation of a controlling rule, regulation, or standard in Defendants' provision of [treatment]").[2]

### B. SBRT/SRS Conditions of Payment

#### 1. Documenting "quality assurance"

The Complaint alleges that on one unspecified occasion, Defendants commenced SBRT treatment for Medicare patient "N" before the Practice's medical physicist, Dr. Andrew Winningham, completed a quality assurance ("QA") evaluation of the treatment plan. (SAC ¶ 92.) Once again, Relators have not rebutted Defendants' explanation of how the Complaint fails to allege that a condition of Medicare payment was violated. (*See* Defs.' Mot. at 9-10.)

LCD L30366's section titled "Documentation Requirements" states: "A radiation oncologist and/or a neurosurgeon, and medical physicist must evaluate the technical aspects of the treatment and document and sign this evaluation as well as the resulting treatment management decisions." (Defs.' Mot., Ex. B at 8.) As Relators admit, this documentation "prerequisite[] must occur ***prior to submitting claim forms***." (SAC ¶ 95 (emphasis added).) Even assuming that this language about technical evaluation governs Defendants' QA protocol, the LCD says nothing about requiring documentation of any quality assurance process ***prior to delivering treatment***. Because the Complaint does not allege a failure to document Dr. Winningham's QA before submitting a ***claim*** for that particular treatment, it does not allege a violation of LCD L30366's documentation condition of payment.

[2] Relators identify only one Medicare patient – "Patient C" – who was allegedly "undergoing IMRT treatment" before approval of the treatment plan was documented. (SAC ¶ 81.) Even if a condition of payment had been violated, the Complaint never alleges that Defendants submitted any claim for Patient C's IMRT treatment. And, even if a claim had been submitted for IMRT ***treatment***, it would be equally possible that no claim was submitted for IMRT ***planning***, given the separate and distinct billing code for the planning process. (*See* Defs.' Mot., Ex. A at 3.)

Relators never alleged the date of the email on which their QA arguments rest (*see* SAC ¶ 92), but they now assert that it was sent on February 20, 2013. (Opp'n at 5.) The Complaint does not plausibly allege, however, that Defendants *ever* submitted any claim for that February 20 treatment. Misleadingly summarizing (rather than quoting) the Complaint, Relators' opposition falsely implies that they alleged the existence of a specific claim for this treatment, and that the Practice's billing coordinator, Sandra Beausang, specifically "confirmed that Space Coast Cancer Center presented ***the above-described claim*** to Medicare." (Opp'n at 14 (emphasis added).) The Complaint says nothing of the kind.

In fact, the Complaint does not identify any claim for Patient N's February 20 treatment. Its only allegation of a claim related to Patient N is for a treatment session several weeks later on March 6, 2013. (SAC ¶ 117.) The Complaint alleges that "sometime after" Dr. Winningham's (assertedly) February 20 email, Ms. Beausang "confirmed that she billed Medicare for Patient N." (*Id.* ¶ 141(c).) The Complaint does not specifically allege when Ms. Beausang said this, when the bill was submitted, or to which treatment she was referring: the February 20 treatment, the March 6 treatment, or some other treatment altogether. (*See* Defs.' Mot. at 18 & n.17.) The Complaint thus alleges only that Medicare was billed for Patient N, but not that Ms. Beausang reported billing Medicare for any SBRT treatment prior to the completion of a QA evaluation.[3] In other words, the allegations tie Patient N only to some unspecified Medicare bills for unspecified radiation treatments, but not to any false claims (whether for the SBRT treatment described or otherwise). Accordingly, nothing in the Complaint makes it plausible, rather than simply possible, that any false claim was submitted for the challenged February 20 treatment.

---

[3] The email quoted in the SAC confirms that the QA for Patient N was completed, even if not before the very first SBRT treatment. (*See* SAC ¶ 92.)

### 2. “Supervision” by a radiation oncologist

Relator’s opposition focuses on the Complaint’s allegations that in March 2013, two Medicare patients – “N” and “P” – received SBRT and SRS treatments, respectively, without a radiation oncologist’s supervision.[4] (Opp’n at 6.) They argue that the Complaint “clearly alleged” that Defendants’ “performance of radiation treatment without proper supervision violates Medicare requirements” as set forth in two authorities: (1) the Medicare Benefit Policy Manual (“MBPM”) and (2) the LCD governing a fifth form of radiation treatment, Image-Guided Radiation Therapy (“IGRT”). (Opp’n at 6-8.) The Complaint fails to plead plausibly and particularly that the MBPM was violated or that the IGRT LCD applies.

First, Relators concede that the MBPM requires only that a “physician” be onsite to supervise radiation therapy in an outpatient setting (*i.e.*, not requiring admission to a hospital), without specifying that the physician be a radiation oncologist. (Opp’n at 6.) The Complaint acknowledges that other physicians were present onsite during therapy. (SAC ¶ 111.) Relators’ opposition merely repeats the Complaint’s non-particularized factual assertions and naked legal conclusions that every one of these unnamed other physicians was not qualified to supervise. (Opp’n at 6-7 (citing SAC ¶¶ 105-106, 112-114).) Relators’ only legal authority is the same one cited in the Complaint: 2009 guidance concerning radiation therapy in a ***hospital-based*** outpatient setting. (*Id.*) Relators ignore Defendants’ observations that this guidance for hospitals is inapplicable to Defendants’ ***office-based*** practice, and that the 2010 version of the hospital guidance confirms that even ***non-physicians*** may provide the supervision. (*See* Defs.’ Mot. at 13-14.)

---

[4] Relators’ opposition brief does not address the other patients who allegedly received radiation treatments without a radiation oncologist’s supervision. (SAC ¶¶ 117-118, 125, 129-130.) These omissions concede Defendants’ point that because these patients were not allegedly Medicare beneficiaries, they are irrelevant to Relators’ arguments. (Defs.’ Mot. at 18 n.16.)

Second, Relators argue that IGRT requires supervision by a radiation oncologist and that Defendants violated that requirement by "fail[ing] to directly supervise IGRT procedures that were performed as a component of SBRT and SRS." (Opp'n at 7 (citing SAC).) While IGRT does require a radiation oncologist's supervision, that requirement is not found in the LCD for SBRT/SRS – it is found in the LCD for IMRT.[5] (Defs.' Mot. at 11 & n.12; *see id.*, Ex. A at 5.)

Relators allege that claims were submitted for SBRT/SRS, and that those procedures "require the use of IGRT." (SAC ¶ 120.) This latter allegation, however, is contradicted by LCD L30366 for SBRT/SRS, which says nothing about IGRT or radiation oncologist supervision. (*See* Defs.' Mot. at 11 n.12.) That LCD is incorporated into the pleadings (*see id.* at 7 n.6), and its silence regarding supervision requirements trumps any contradictory allegations by Relators. *Cf. Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." (quotation marks omitted)).[6]

### C. Absence of Knowing Falsity

As discussed, the actual conditions of payment governing radiation therapy do not apply to Defendants' alleged conduct in the way that Relators contend. Where, as here, "no regulations cover the circumstances" of the defendants' alleged conduct, "[i]t is simply not plausible, then,

[5] Relators do not contest that the LCD for IMRT does not require a radiation oncologist's supervision other than for IGRT. (Defs.' Mot. at 11.) *Cf. U.S. ex rel. Hericks v. Lincare Inc.*, No. 07-CV-387, 2014 WL 1225660, at *11 (E.D. Pa. Mar. 25, 2014) (dismissing *qui tam* where LCD did not address type of procedure that defendant allegedly performed, such that relator did not plead that defendant "violated CMS's LCD regulations").

[6] LCD L30366 also notes that SBRT and SRS rely on "immobilization technology and/or a stereotactic image-guidance system." (Defs.' Mot., Ex. B at 2.) Even construing "image-guidance" as a reference to IGRT, the "and/or" qualifier renders IGRT only a ***possible***, but not a ***necessary***, component of SBRT and SRS, once again contradicting Relators' allegations. Thus, even if IGRT were performed in ***some*** instances of SBRT/SRS, Relators have not plausibly or particularly alleged any claims related to ***those*** instances of SBRT/SRS where radiation oncologist supervision was purportedly required, but not provided.

that defendants knew or should have known they were submitting claims that were false." *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 316 (S.D.N.Y. 2011) (holding that complaint failed to allege plausibly a knowing false claim), *aff'd*, 531 F. App'x 118 (2d Cir. 2013). (*See also* Defs.' Mot. at 14-16 (citing cases).) Relators responded to these arguments merely by copying the Complaints' allegations about the law. (*See* Opp'n at 9-12.) This is insufficient. Relators' "inability to identify any regulation violated by [D]efendants demonstrates that [D]efendants' interpretation of the Medicare regulations was not unreasonable, and thus not knowingly false or fraudulent." *Colucci*, 785 F. Supp. 2d at 316 (finding FCA liability inappropriate "given the lack of clarity in the law" and "the absence of a clear obligation" for defendants to bill as allegedly required).

Relators also repeat their allegation that Dr. Bryant was "falsely" listed as "both the primary oncologist and covering oncologist" on unidentified documents "justifying all radiation treatment delivery procedures," asserting that this conduct implies knowing impropriety. (Opp'n at 11 (copying SAC ¶ 115).) In addition to being insufficiently particular and irrelevant (*see* Defs.' Mot. at 23), this allegation is legally incorrect. When a radiation oncologist orders radiation treatments, Medicare does not require that radiation treatment claims identify the "supervising" physician. Relators do not cite the source of their supposed requirement to the contrary, but they appear to rely on Medicare's regulations for "incident to" services, which require that supervising physicians be identified on the claim forms.[7] (*See also* SAC ¶ 107 (citing "incident to" regulations).) That requirement is inapplicable here, however, because radiation treatments are not provided under Medicare's "incident to" framework. (*See* Defs' Mot. at 12-13 & n.14.)

---

[7] *See* Medicare Claims Processing Manual, Ch. 26, §10.4, Items 24j & 31, *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c26.pdf.

## II. RELATORS' ALLEGED CONVERSATIONS WITH DEFENDANTS' BILLING COORDINATOR DO NOT EXCUSE THEIR FAILURE TO IDENTIFY ACTUAL FALSE CLAIMS OR STATEMENTS.

The Complaint identifies only two allegedly false claims submitted for Medicare patients N and P. As discussed (*see supra* at 5-6), those allegations regarding inadequate supervision of SBRT/SRS are legally insufficient, which renders irrelevant Relator Parker's supposed conversation with Ms. Beausang about an unspecified bill for patient N. (*See* Opp'n at 13-14.)

Relators' failure to allege any other claims with particularity is fatal under Eleventh Circuit precedent. (*See* Defs.' Mot. at 17.) Originally, the Complaint alleged firsthand knowledge of Defendants' billing practices, but Defendants explained why those allegations were unfounded and misleading. (*See id.* at 20-22.) Relators have now retreated and argue only that they have firsthand knowledge "of the fraudulent conduct," but that they lack access to the information they would need "to more particularly plead" false claims. (Opp'n at 14.) They cite "indicia of reliability" for their assertions, but these supposed indicia are merely secondhand knowledge of billing practices, and firsthand or secondhand knowledge that some radiation treatments were not supervised by a radiation oncologist – even though many treatments do not require such supervision.[8] (*See id.* at 16-17.) None of their "indicia" support, as they must, "the allegation of *an actual false claim* for payment being made to the Government." *U.S. ex rel. Clausen v. Lab. Corp. of Am. Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (emphasis in original).

As the Eleventh Circuit recently explained, "a plaintiff-relator without first-hand knowledge of the defendants' billing practices" is "unlikely to have a sufficient basis" for asserting that the defendants actually submitted false claims. *U.S. ex rel. Mastej v. Health Mgmt.*

[8] For example, Relator Scheer supposedly reviewed patient charts involving treatments unsupervised by Dr. Bryant – but the radiation therapies at issue are not identified, and could have been ones for which no radiation oncologist supervision was required (*i.e.* services other than IGRT). (*See* Opp'n at 17 (copying SAC ¶ 142(e)).)

*Assocs., Inc.*, No. 13-11859, 2014 WL 5471925, at *9 (11th Cir. Oct. 30, 2014) (distinguishing insider knowledge of relator who was a former high-level corporate officer of the defendant, from a physician or other employee who lacks firsthand knowledge of claim submissions). Relators do not have such knowledge.

Relators rely nonetheless on *U.S. ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005), for the proposition that they need not identify any false claims. *Walker* is readily distinguishable. (*See also* Defs.' Mot. at 22 n.22.) There, the relator was a nurse at a medical practice, who was "instructed each day" about how to execute the challenged billing practices and also had a detailed discussion with the practice's office manager about "the propriety of the billing method" and how the practice had "never" billed services any other way. 433 F.3d at 1360. Here, by contrast, Ms. Beausang only allegedly told Relator Parker that she had "submitted claims" to government payors for IMRT, 3D-CRT, SBRT, and SRS despite the absence of radiation oncologist supervision. (*See* Opp'n at 17 (copying SAC ¶ 141(d)).) First, this allegation about Ms. Beausang's statement is irrelevant, given the absence of any published condition of payment that radiation oncologists supervise *any* of these forms of radiation treatment. Second, she is not alleged to have said the submissions were improper or that anyone gave her improper instructions. Third, the Complaint offers no specificity regarding the instances, number, or frequency of claims for the supposedly unsupervised treatments. Thus, the allegation concerning Ms. Beausang cannot be shoehorned into *Walker*'s exceptionally detailed and categorical allegation that claims were "never" submitted properly.

## III. RELATORS FAIL TO PLEAD ANY REVERSE FALSE CLAIMS.

Relators try to buttress their faulty "reverse false claims" argument by relying on *U.S. ex rel. Willis v. Angels of Hope Hospice, Inc.*, No. 5:11-CV-041, 2014 WL 684657 (M.D. Ga. Feb. 21, 2014). That reliance is misplaced. In *Willis*, the relator made specific allegations about the

defendant's efforts "to conceal, avoid, or decrease its obligation to repay Medicare." *Id.* at *13. There is nothing comparable here.

In this case, all alleged statements and conduct were in supposed pursuit of securing payments, not any scheme to hide or avoid repayment obligations, as was the case in *Willis*. *Compare Willis*, 2014 WL 684657, at *13 (citing specific allegations of defendant telling relator about efforts to avoid repayment obligations). Relators do not allege that Defendants made any statements or certifications "for the purpose" of avoiding payment to the government, *id.* at *11-*12 (quoting *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012)), nor do they allege such a purpose for the alleged false statements or certifications that accompanied the original claim submissions. (*See also* Defs.' Mot. at 24-25.)

## IV. CONCLUSION

For the foregoing reasons, and for the reasons previously stated in Defendants' opening motion, Relators' Second Amended Complaint should be dismissed for failure to plead plausible and particular claims upon which relief may be granted.

Dated: December 8, 2014

Respectfully submitted,

/s/ William D. Horgan
Brian Newman (FBN: 004758)
William D. Horgan (FBN: 176877)
PENNINGTON, P.A.
215 S. Monroe Street, 2nd Floor (32301)
P.O. Box 10095 (32302-2095)
Tallahassee, FL
Telephone: (850) 222-3533
Fax: (850) 222-2126
bnewman@penningtonlaw.com
whorgan@penningtonlaw.com

/s/ Mark D. Colley
Mark D. Colley (*pro hac vice*)
Alan E. Reider (*pro hac vice*)
Murad Hussain (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Fax: (202) 942-5999
Mark.Colley@aporter.com
Alan.Reider@aporter.com
Murad.Hussain@aporter.com

*Counsel for Defendants Space Coast Medical Associates, L.L.P., Dr. Cynthia Jean Bryant, and Brevard Hematology and Oncology Consultants – Levine, Zimm, and Sprawls, M.D., P.A. aka Space Coast Cancer Center*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2014, I served all parties by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system.

/s/ William D. Horgan

Brian Newman (FBN: 004758)
William D. Horgan (FBN: 176877)
PENNINGTON, P.A.
215 S. Monroe Street, 2nd Floor (32301)
P.O. Box 10095 (32302-2095)
Tallahassee, FL
Telephone: (850) 222-3533
Fax: (850) 222-2126
bnewman@penningtonlaw.com
whorgan@penningtonlaw.com
*Counsel for Defendants*