**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA, STATE OF FLORIDA, ROBERT PARKER, and THOMAS SCHEER,**

**Plaintiffs,**

**v.** **Case No: 6:13-cv-1068-Orl-22TBS**

**SPACE COAST MEDICAL ASSOCIATES, L.L.P., CYNTHIA JEAN BRYANT, and BREVARD HEMATOLOGY AND ONCOLOGY CONSULTANTS - LEVINE, ZIMM AND SPRAWLS, M.D., P.A.,**

**Defendants.**

# ORDER

Plaintiffs Robert Parker and Thomas Scheer, *qui tam* relators ("Relators"), bring this suit against Defendants Space Coast Medical Associates, L.L.P., a group medical practice; its corporate partner, Brevard Hematology and Oncology Consultants-Levine, Zimm and Sprawls, M.D., P.A.[1]; and its radiation oncologist, Dr. Cynthia Jean Bryant, pursuant to the False Claims Acts of the United States[2] and Florida[3] (hereinafter collectively referred to as "the False Claims Act").[4] Defendants filed a motion to dismiss the case. Because the

[1] Hematology and Oncology Consultants uses the fictitious name "Space Coast Cancer Center," in advertising its services. (Second Am. Compl., Doc. 61, ¶ 4).

[2] 31 U.S.C. §§ 3729-3733.

[3] §§ 68.081-68.092, Fla. Stat.

[4] "[T]he Florida False Claims Act mirrors the federal False Claims Act and is subject to the same pleading standard . . . ." United States ex rel. Schubert v. All Children's Health

Second Amended Complaint does not set forth false statements that Defendants knowingly submitted to the government, the motion must be granted. However, Relators will be allowed an opportunity to replead their claims.

## I. Background[5]

Relators sue Defendants under the False Claims Act, alleging problems with Defendants' provision of and billing the government for radiation therapy services. (Second Am. Compl., Doc. 61). Defendants administer radiation therapy[6] at their offices in Titusville, Florida and Viera, Florida. (Id. ¶ 49). Dr. Bryant is the only radiation oncologist for the medical practice and "is responsible for supervising Defendants' entire radiation therapy practice at the Titusville and Viera Offices," with "[m]any radiation therapy procedures requir[ing] her direct supervision." (Id. ¶ 50). Relator Parker was the lead radiation therapist at Defendants' Viera office from June 2011 until October 2013. (Id. ¶¶

Sys., Inc., No. 8:11-cv-1687-T-27EAJ, 2013 WL 1651811, at *5 (M.D. Fla. Apr. 16, 2013); see also United States ex rel. Heater v. Holy Cross Hosp., Inc., 510 F. Supp. 2d 1027, 1033 n.5 (S.D. Fla. 2007). The parties' submissions contain no separate discussions regarding the Florida False Claims Act. (See Docs. 65, 68, & 73). Accordingly, though this Order focuses on the federal False Claims Act, its reasoning and rulings apply to the Relators' claims under both statutes.

[5] The Background section contains facts as stated in the Second Amended Complaint and accepted as true for purposes of the motion to dismiss.

[6] "Radiation therapy uses high-energy radiation to kill cancer cells and carries significant risk of radiation overdose, which may cause organ failure or death. . . . The practice of radiation therapy involves a clinical team led by a radiation oncologist, which generally includes a medical physicist, a dosimetrist, radiation therapists, and nursing staff." (Second Am. Compl. ¶¶ 46 & 48). The radiation therapy at issue here is external beam radiation therapy. (Id. ¶ 58). The Second Amended Complaint details different types of external beam radiation involved in this case. (Id. ¶¶ 60-78). Unless otherwise noted, the distinctions between these types of radiation are not relevant to this Order.

6 & 53). Relator Scheer briefly substituted for Dr. Bryant as a *locum tenens* physician[7] during July 2013 at both the Titusville and Viera offices. (Id. ¶ 7).

Relators allege that Defendants have violated the False Claims Act based on several problems with their procedures for providing and billing government programs for radiation therapies.[8] These allegations are detailed in the subsections below.

**A. Verification**

Relators allege that "Dr. Bryant routinely fails to verify radiation treatment plans prior to Defendants' delivery of radiation treatment on cancer patients," (id. ¶ 79), a violation of a local coverage determination ("LCD")[9] which, according to Relators, mandates that "development of a radiation treatment plan by Dr. Bryant is a prerequisite" to the radiation therapy provided, (id. ¶ 84). In other words, Relators allege that Defendants violated the False Claims Act by providing radiation treatment contrary to an LCD that requires "the

[7] *Locum tenens* means "one filling an office for a time or temporarily taking the place of another." Webster's Third New International Dictionary 1329 (2002).

[8] Relators allege that Defendants are providers or participants in Medicare Part B (Second Am. Compl. ¶¶ 24 & 27) and Medicaid (id. ¶ 40), two government healthcare programs. Relators also set forth details about the TRICARE program and allege that some of Defendants' patients utilize the TRICARE program as a primary insurer. (Id. ¶¶ 41-44, 140). Though Relators do not specifically allege that Defendants are providers or participants under TRICARE, the allegations regarding that program as well as allegations that Defendants submitted claims to all three healthcare programs, (see, e.g., id. ¶ 133), sufficiently allege that Defendants were providers for TRICARE. Claims submitted to these healthcare programs form the basis for Relators' claims.

[9] An LCD is "a determination by a fiscal intermediary or a carrier . . . , respecting whether or not a particular item or service is covered on an intermediary- or carrier-wide basis . . ." under Medicare. 42 U.S.C. § 1395ff(f)(2)(B). As stated in the Second Amended Complaint, LCDs are published by private local entities who are government "agents for viewing, processing, and paying Medicare claims." (Second Am. Compl. ¶ 26). The LCDs "clarify the conditions of coverage and reimbursement for particular services." (Id.).

involvement of a radiation oncologist . . . throughout the provision" of the treatment. (Id. ¶ 82).

Specifically, Relators allege that a therapist for Defendants "emailed Dr. Bryant a list of patients that were 'currently under treatment with unapproved Radiation Treatment Plans[,]'" and that Dr. Bryant responded by stating that "she prefers to 'just go in and approve all the plans at once[.]'" (Id. ¶ 80 (alterations in original)). Relators allege that a specific Medicare patient, "Patient C," was on that list and undergoing radiation therapy and that an LCD required a radiation oncologist's involvement throughout provision of that therapy. (See id. ¶¶ 81-82). Thus, Relators allege that "all claim forms submitted to the Government Healthcare Programs for radiation treatments [sic] plans prior to Dr. Bryant's approval are fraudulent because such plans were not developed or supervised by Dr. Bryant." (Id. ¶ 86; see also id. ¶ 88).

### B. Quality Assurance Evaluations

Relators also allege that "Defendants' medical physicist commonly fails to perform quality assurance evaluations on cancer patients prior to the delivery of serious radiation treatment," (id. ¶ 91), a prerequisite to submitting claim forms for some radiation treatments under an LCD, (id. ¶ 95). Relators reference a specific email in which a medical physicist stated, "'[Patient N] was treated before I analyzed his [quality assurance evaluation]. This shouldn't happen. . . . I've been letting a few things slide because we've been busy, but this is where I draw the line.'" (Id. ¶ 92 (first alteration in original)). Relators allege that Defendants violated the False Claims Act, as evidenced by this email, because quality assurance evaluations were not done for all patients.[10]

---

[10] Though Relators allege that the quality assurance evaluations were not done prior to treatment, (Second Am. Compl. ¶ 91), they allege only that an LCD requires the

**C. Lack of Supervision**

Relators next allege that approximately "50% of all radiation therapy treatment procedures are performed when there is no radiation oncologist present in the facility." (Id. ¶ 101). Though Defendants have only one radiation oncologist for the entire practice, which consists of two offices, (id. ¶ 50), "Defendants' standard practice is to simultaneously engage in radiation therapy at both locations. Defendants generally schedule cancer patients for radiation therapy from 8:30 am to 5:15 pm at the Titusville Office and 9:00 am to 5:30 pm at the Viera Office, Monday through Friday," (id. ¶ 51). According to Relators, this violates a "requirement that radiation therapy services be directly supervised by a physician that is immediately available to provide assistance and direction throughout the time the radiation therapy procedure is being performed." (id. ¶ 104; see also id. ¶¶ 105-08 (citing the Code of Federal Regulations and the Medicare Benefit Policy Manual)). Relators provide patient pseudonyms and the dates and locations of treatment as examples of bills that were submitted for unsupervised radiation treatment. (Id. ¶¶ 117, 118, 129, & 130). It is Defendants' policy to use a different billing code when Dr. Bryant is not present at the treatment, (id. ¶¶ 124 & 125), and Relators argue that this is evidence that Defendants billed for procedures in which they failed to comply with the regulations, (see id. ¶126).

**D. Specific Billing Allegations**

Based on their personal knowledge, Relators also make allegations regarding Defendants' billing practices. (Id. ¶¶ 131 & 134). Relator Parker was the lead radiation

---

evaluations prior to submission of claims, (id. ¶ 95). Whether the lack of evaluations prior to treatment can constitute a false statement under the False Claims Act will be discussed below.

therapist at the Viera office, (id. ¶ 138), while Relator Scheer reviewed Dr. Bryant's charts and schedules as a *locum tenens* physician in July 2013, (id. ¶¶ 7, 131-32).

Defendants' billing operated in a two-part system, with practitioners entering billing codes that were imported into a billing system for eventual final processing and submission. (See id. ¶ 135). Relator Parker was one of two people who "were responsible for reviewing and approving claims to be submitted to the government prior to forwarding the claims to [the billing coordinator] for final processing and submission using the cloud-based Centricity billing system." (Id. ¶ 138). The billing coordinator would then submit the claims to the government healthcare programs. (Id. ¶ 139). Relator Parker estimates that 80 percent of Defendants' patients of a particular type of radiation therapy utilized government programs for their primary healthcare coverage. (Id. ¶ 140). Relator Parker also alleges that he had a conversation with the billing coordinator, who confirmed that she billed Medicare for a patient who was treated before a quality assurance evaluation was completed and for patients who underwent treatment without the presence of a radiation oncologist in the building. (Id. ¶¶ 92, 141). Relators contend that Relator Parker's conversations and personal understanding of Defendants' billing practices, including his acts of reviewing and approving claims and forwarding the claims to the billing coordinator, in addition to Relator Scheer's review of Dr. Bryant's charts and schedules, reveal that Defendants were billing for therapies in violation of the False Claims Act. (Id. ¶ 141).

**E. Procedural History**

Pursuant to the requirements of the False Claims Act, Relator Parker served the governments of the United States and Florida "with a written disclosure of material evidence and information" in support of his allegations on June 28, 2013. (Id. ¶ 18). The original Complaint was filed on July 15, 2013. (Doc. 1). The United States and the state

of Florida declined to intervene in the action. (Docs. 8 & 47). An Amended Complaint was filed on September 23, 2014. (Doc. 51). The Second Amended Complaint, (Doc. 61), adding Relator Scheer, was filed on October 30, 2014, with permission of the Court, (Doc. 60).

In the Second Amended Complaint, Relators allege eight causes of action—four each under federal and Florida law: presenting false claims (Counts I & II); presenting false claims (solely against Dr. Bryant) (Counts III & IV); making material, false records or certifications (Counts V & VI); and using false statements or certifications to avoid or conceal an obligation to repay fraudulently obtained funds (Counts VII & VIII). Defendants filed a Consolidated Motion to Dismiss Relators' Second Amended Complaint (Doc. 65), to which Relators filed a Response (Doc. 68) and Defendants filed a Reply (Doc. 73).

## II. Pleading Standards

Defendants bring their motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Rule 12(b)(6) provides for dismissal of a claim based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. (citing Twombly, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

In addition to complying with Rule 8, complaints under the False Claims Act must also comply with Rule 9(b). United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1309-10 (11th Cir. 2002). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "'Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Clausen, 290 F.3d at 1310 (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)). For False Claims Act cases, the actual submission of the claim must be pled with particularity and not simply implied from the circumstances. Corsello v. Lincare, Inc., 428 F.3d 1008, 1013 (11th Cir. 2005). The purpose of this requirement is to alert defendants "'to the precise misconduct with which they are charged and [to protect] defendants against spurious charges of immoral and fraudulent behavior.'" United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)).

## III. Discussion

Relators seek relief under several subsections of the False Claims Act. These subsections reflect some overlapping elements. Ultimately, because the Second Amended

Complaint does not set forth false statements that Defendants knowingly submitted to the government, Defendants' motion to dismiss must be granted.

**A. Counts I through IV**

In Counts I through IV, Relators sue under 31 U.S.C. § 3729(a)(1)(A) and Section 68.082(2)(a), Florida Statutes. These subsections provide that a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is civilly liable to the United States or Florida governments. 31 U.S.C. § 3729(a)(1)(A); accord § 68.082(2)(a), Fla. Stat. "Liability under [this subsection of] the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies." Corsello, 428 F.3d at 1012. "To establish a cause of action under [this subsection of] the False Claims Act, a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States ex rel. Walker v. R&F Props. of Lake Cnty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005).

*1. Pleading Standards*

Defendants argue that the Second Amended Complaint does not allege with sufficient particularity that false claims were presented to the government. (Mot. Dismiss at 17-24). Defendants assert that Relators fail to identify any specific false claims, plausibly allege that false claims were actually submitted to the government, or identify any false certifications. The first two arguments are intertwined and will be addressed together.

The submission of particular claims to the government must be alleged with particularity to satisfy Rule 9(b). "[S]ome indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the

Government." Clausen, 290 F.3d at 1311. Complaints that merely make conclusory allegations that claims were submitted are insufficient. See id. at 1312; Corsello, 428 F.3d at 1013. To provide indicia of reliability, relators can state specific billing data—such as amounts, dates, names, or services rendered—or they can attach copies of specific bills. See Clausen, 290 F.3d at 1312; Corsello, 428 F.3d at 1013; United States ex rel. Mastej v. Health Mgmt. Assocs., Inc., No. 13-11859, 2014 WL 5471925, at *9 (11th Cir. Oct. 30, 2014) ("Providing exact billing data—name, date, amount, and services rendered—or attaching a representative sample claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted.").

Including all details about bills may not be necessary under certain circumstances. Hill v. Morehouse Med. Assocs., Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003). If the relators have specialized knowledge about the alleged fraudulent billing practices, there may be sufficient indicia of reliability to allow relators to avoid pleading specific information about particular bills. See id. at *4-5 & n.8 (holding that a relator met the pleading standards of Rule 9(b) though she did not provide dates of bills or client names because she alleged working in the billing department of defendant and observing falsification of billing documents, identified the confidential documents in the defendant's possession, and alleged facts describing the defendant's billing process); Corsello, 428 F.3d at 1013-14 (citing Hill and focusing on whether the relator sufficiently pleaded specialized knowledge of billing); Walker, 433 F.3d at 1360 (holding that a relator sufficiently pled a False Claims Act claim when she alleged that she was instructed to bill in a manner that was a violation of the Act and had many discussions about these

practices)[11]; Mastej, 2014 WL 5471925, at *9 ("Although there are no bright-line rules, our case law has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims.").

On the other hand, "a plaintiff-relator without first-hand knowledge of the defendants' billing practices is unlikely to have a sufficient basis for such an allegation." Mastej, 2014 WL 5471925, at *9; see also Atkins, 470 F.3d at 1359 (holding that "a psychiatrist responsible for the provision of medical care" who heard rumors and observed questionable medical practices of two other psychiatrists did not allege firsthand knowledge or other information constituting sufficient indicia of reliability). Additionally, the types of false claims at issue are important. For example, the Eleventh Circuit has found that a corporate insider and officer who knew about the defendants' billings sufficiently pleaded a claim with particularity, but the court noted that because the allegations were violations relating to doctors' financial incentives, particularized information about bills did not matter as much as it might in other cases. Mastej, 2014 WL 5471925, at *13. All of these cases indicate that a district court must analyze the totality of the circumstances on a case-by-

[11] Notably, Hill is unpublished and is not binding precedent, and to the extent Hill is inconsistent with Clausen, Clausen controls. United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358 n.15 (11th Cir. 2006). The Eleventh Circuit's prior-panel-precedent rule also means that, to the extent Walker conflicts with Clausen, Clausen controls. United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1303 n.4 (11th Cir. 2010) (distinguishing the case from Walker because the relator in Walker had more specific allegations). However, Hill and Walker are not necessarily inconsistent with Clausen—Hill and Walker simply provide more detail about what constitutes sufficient indicia of reliability. The Court will follow the Clausen standard and utilize Hill and Walker in determining whether Relators here have pleaded a claim with sufficient indicia of reliability.

case basis to determine whether the relators have met the requirement of providing sufficient indicia of reliability. See Atkins, 470 F.3d at 1358.

In this case, Relator Parker, as someone who was responsible for reviewing and approving claims, sufficiently alleges particularized knowledge of Defendants' billing process and of alleged fraudulent bills. Further, he identifies by name the billing coordinator who allegedly verified that incorrect bills were sent. (Second Am. Compl. ¶ 141(c)). Though the allegations of claims submitted to the government do not particularly state the dates of bills or the patients' names, Relators state individual Medicare patients, identified by pseudonyms such as Patients C and N, who received particular treatments. (Id. ¶¶ 81, 92, 117, & 118). When connected to Relator Parker's conversation with the billing coordinator, these allegations provide sufficient indicia of reliability that claims were submitted.

Defendants argue that Relators have not sufficiently alleged that Defendants sent these bills to government programs. (Mot. Dismiss at 19) ("Merely because someone is a Medicare patient, however, does not mean that Medicare was billed for the treatment."). However, Relators allege that Relator Parker was told by the billing coordinator that Medicare was billed for a specific patient ("Patient N"), (Second Am. Compl. ¶ 141(c)), and that Relator Scheer reviewed patients' charts and discovered that the government was improperly billed, (id. ¶ 133). Relators are not merely asking the Court to infer that government programs were billed merely because a high percentage of Defendants' patients had these programs as their primary insurer; they have instead alleged facts indicating that the government was billed. Accordingly, Relators have adequately pleaded that claims were submitted to government programs.

Additionally, Defendants argue that Relators fail to identify false certifications of regulatory compliance. (Mot. Dismiss at 23). Defendants, however, fail to set forth the requirements for pleading false certifications. Implied false certifications are sufficient to state a claim under the False Claims Act, as discussed below, but claims under this theory must be pleaded with particularity. Schubert, 2013 WL 1651811, at *3. Relators have specifically pleaded what rules Defendants allegedly broke and how they broke them. As noted above, Relators have sufficiently pleaded false claims submitted to the government, in violation of these rules. Thus, Relators have sufficiently alleged, for purposes of pleading, that Defendants broke rules and submitted impliedly false certifications. Whether Relators have met pleading standards for falsity is analyzed below.

*2. Falsity*

Defendants also argue that Relators' claims under § 3729(a)(1)(A) do not plausibly allege that any claim was false or fraudulent. (Mot. Dismiss at 6-15). Relators respond that the Second Amended Complaint alleges violations of the programs' conditions of payment and are thus alleges false claims. (Response at 4-8).

A claim is considered false under the False Claims Act if it is either factually or legally false. Prime v. Post, Buckley, Schuh & Jernigan, Inc., No. 6:10-cv-1950-Orl-36DAB, 2013 WL 4506357, at *8 (M.D. Fla. Aug. 23, 2013). "'A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment.'" Id. at *8 (quoting United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 305 (3d Cir. 2011)). Legal falsity can be based on two types of false certifications, express and implied. Id.; Schubert, 2013 WL 1651811, at *3. An implied false certification is false

when the submission of the claim implies compliance with "'federal rules that are a precondition to payment.'" Prime, 2013 WL 4506357 at *8 (quoting Wilkins, 659 F.3d at 305)); see also McNutt ex rel. United States v. Haleyville Med. Supplies, Inc., 423 F.3d 1256, 1259 (11th Cir. 2005). If the rules at issue are conditions of payment, rather than conditions of participation in a particular program, the implied false certification may be actionable under the False Claims Act. See Baklid-Kunz v. Halifax Hosp. Med. Ctr., No. 6:09-cv-1002-Orl-31TBS, 2014 WL 2968251, at *5 (M.D. Fla. July 1, 2014) (quoting United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1220 (10th Cir. 2008)); see also McNutt, 423 F.3d at 1259.

Defendants argue that factual falsity is not at issue because "[t]he [Second Amended Complaint] does not allege that Defendants submitted factually false claims, *i.e.*, that the Practice billed for services that were not provided." (Mot. Dismiss at 7). In response, Relators focus on alleged violations of conditions of payment and thus appear to argue only that they sufficiently pleaded legally false claims. (See Response at 5). The Court agrees with Defendants that the Second Amended Complaint does not state a basis for factually false claims. Relators also do not argue in the Response that they submitted express false certifications. (Cf. Response at 13-14 ("Relators sufficiently alleged that Space Coast Cancer Center presented a CMS-1500 claim form to Medicare . . . which included an implied false certification of compliance . . . .")).[12] The falsity of Defendants'

---

[12] The Second Amended Complaint alleges that Defendants were Medicare providers and thus were required to complete enrollment forms with certain certifications. (Second Am. Compl. ¶¶ 27-30). Because these allegations are tied to initial participation requirements and not to individual claims, and because Relators do not explicitly argue that Defendants submitted express false certifications, the Court reads the Second Amended Complaint as attempting to set forth claims of implied false certifications.

claims, then, depends on whether Defendants impliedly certified legally false claims that violated a condition of payment.

To determine whether Defendants submitted an implied false certification of a claim, the Court must analyze the government programs' statutory and regulatory schemes and the requirements imposed on providers. The parties do not dispute that, in addition to statutes and regulations, LCDs—issued by private local entities contracting with the government—set forth and govern the conditions of coverage and reimbursement under Medicare.[13] (Second Am. Compl. ¶ 26; Mot. Dismiss at 8 & n.6).

First, Relators allege that Defendants delivered radiation treatment based on unverified radiation plans and that these actions violated an LCD that "makes clear that the involvement of a radiation oncologist is required throughout the provision of" some types

---

[13] In considering a motion to dismiss, courts can generally only consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). However, a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the LCDs are central to and referenced in the Second Amended Complaint, and they are undisputed. Accordingly, the Court will consider the LCDs attached to the Motion to Dismiss. (Docs. 65-1 & 65-2).

As for whether LCDs are rules that, upon their violation, can result in liability under the False Claims Act, some courts analyze alleged violations of LCDs as possible violations of the False Claims Act. See Hericks v. Lincare Inc., Civil Action No. 07-387, 2014 WL 1225660, at *10-11 (E.D. Pa. Mar. 25, 2014) (holding that the applicable LCD did not address the type of conduct at issue). Other courts, however, note that LCDs are issued by contractors and express doubt that requirements found in these determinations can serve as a basis for a False Claims Act violation, especially where the relators did "not cite to a statute or regulation that conditions payment of a Medicare claim on compliance with any LCD." United States ex rel. McMullen v. Ascension Health, No. 3-12-0501, 2013 WL 6073549, at *2 n.3 (M.D. Tenn. Nov. 18, 2013). Because these documents detail the requirements for payment and billing for particular procedures and are statutorily defined as determining coverage, 42 U.S.C. § 1395ff(f)(2)(B), the Court will consider them as potential bases for liability in this case.

of radiation therapy. (Second Am. Compl. ¶¶ 79 & 82 (citing First Coast Service Options LCD L29200)). This LCD states that for intensity-modulated radiation therapy, a plan is "required for the delivery" of the therapy and must include, among other things, documentation of a review by the radiation oncologist of images and histograms, as well as "[d]ocumentation of dosimetric verification of treatment setup and delivery, signed by both the radiation oncologist and the medical physicist." (Doc. 65-1 at 4). Because this LCD focuses on procedures and codes for billing for the services, the Court finds that this documentation is a condition of payment for Medicare. However, the Relators' argument does not support that the LCD requires that documentation must occur before treatment; in fact, because the determination focuses on procedures for billing, it is likely that the documentation is required prior to billing alone.[14] Relators have not presented authority to indicate otherwise. The Second Amended Complaint only alleges that there was not verification prior to treatment. Accordingly, the Second Amended Complaint does not adequately allege that Defendants submitted a false claim on this basis.

Relators also allege that Defendants violated an LCD by delivering radiation treatment prior to or without performing quality assurance evaluations. (Second Am. Compl. ¶¶ 91 & 95). The LCD cited by Relators (L30366) addresses stereotactic body radiation therapy and requires documentation of the date of treatment and the current treatment dose. (Doc. 65-2 at 9). A medical physicist and a radiation oncologist or a neurosurgeon must evaluate the technical aspects of the treatment and "document and sign this evaluation as well as the resulting treatment management decisions." (Id.).

---

[14] While the LCD requires the development of a plan "for the delivery of" the treatment, (Doc. 65-1 at 4), Relators have not made a convincing argument that documentation of that plan is required before delivery of the treatment.

"When the documentation does not meet the criteria for the service rendered or the documentation does not establish the medical necessity for the services, such services will be denied as not reasonable and necessary under Section 1862(a) of the Social Security Act." (Id.). As with plan verification, the LCD requirements focus on billing and coding, so a violation of the determination could be an implied false certification of a payment condition. However, the Second Amended Complaint and Relators' arguments do not sufficiently state that the LCD requires a quality assurance evaluation to be provided prior to treatment rather than prior to billing. (See, e.g., Second Am. Compl. ¶ 95 (stating that documentation is required "prior to submitting claim forms")). The Second Amended Complaint only alleges a lack of quality assurance evaluations prior to treatment; it thus has not stated a claim of an implied false certification.

Finally, Relators allege that Defendants performed radiation treatment without proper supervision, in violation of federal regulations and policy. (Id. ¶¶ 101 & 104). In support of this argument, Relators rely on federal regulations that state that Medicare Part B pays for radiation services, which are considered "physician services." See 42 C.F.R. §§ 410.35 & 414.2(5). Relators argue that the Medicare Benefit Policy Manual requires direct personal supervision of a physician who is "immediately available to provide assistance and direction throughout the time the procedure is being performed." (Second Am. Compl. ¶ 106). Relators do not provide a copy or a citation to this manual, but even assuming that their allegations are true and that the manual applies to Defendants, the Second Amended Complaint does not allege a violation of the manual. Because Relators allege only an absence of a radiation oncologist present in the facility, (see id. ¶ 109)—not the absence of any physician—the Second Amended Complaint does not state a violation

of the Medicare Benefit Policy Manual.[15] Relators also cite the LCDs already mentioned in this Order, but they fail to direct the Court to any requirement in the LCDs that a radiation oncologist be present at the time of treatment.[16] The additional regulations and policy relied on by Relators do not appear to apply in this case.[17] The Second Amended Complaint thus does not allege that any other regulation may constitute a condition of

---

[15] Though Relators argue that other physicians in the facility are not clinically appropriate to supervise radiation therapy, (Second Am. Compl. ¶ 111), Relators do not plead with any particularity who these physicians are and why they are not clinical appropriate. To withstand a motion to dismiss, Relators must plead with specificity why any physicians present in the facility are not supervisors under the meaning of applicable regulations.

[16] Relators cite LCD 29200 for its requirement of direct supervision by a radiation oncologist for Image Guided Radiation Therapy (IGRT). (Second Am. Compl. ¶ 123; see also Doc. 65-1 at 5). However, statements in the Second Amended Complaint that IGRT is a component of other types of therapy and cannot be billed for separately, (Second Am. Compl. ¶ 120), contradict other allegations in the Second Amended Complaint and the LCD itself, (id. ¶ 122 & 124; Doc. 65-1 at 5). In any event, Relators' allegations that Defendants used an apparently unbillable code when Dr. Bryant was not present to supervise IGRT negate any allegations that Defendants did not comply with LCD 29200. (See Second Am. Compl. ¶¶ 124-26).

[17] To establish a heightened requirement of "direct supervision" for the provision of radiation therapy services, Relators cite regulations that provide that "Medicare Part B pays for services and supplies incident to the service of a physician (or other practitioner)," but that generally the "[s]ervices and supplies must be furnished under the direct supervision of the physician (or other practitioner)." 42 C.F.R. § 410.26(b)(5). However, as Defendants point out, "services and supplies" in § 410.26 do not include radiation therapy because it is listed as a separate Medicare benefit. See 42 C.F.R. § 410.26(a)(7); 42 U.S.C. § 1395x(s)(4). Thus, the direct supervision requirement in § 410.26(b)(5) does not apply.

Additionally, Relators argue that responses to comments from the Centers for Medicare and Medicaid Services indicate that a supervising physician should be able to "'take over performance of a procedure.'" (Second Am. Compl. ¶ 112 (citing 74 Fed. Reg. 60316, 60584)). This commentary, however, applies to hospital outpatient programs, and Relators have not alleged that Defendants fall into that category. While similar requirements may apply to practices like Defendants', Relators must direct the Court to any such regulations.

payment for lack of supervision. Accordingly, Relators fail to sufficiently allege that any claims submitted by Relators were false.

It is possible, however, that given a chance to amend the Second Amended Complaint, Relators could provide additional facts, authority, or arguments to sufficiently state the submission of a false claim.

*3. Knowledge*

Defendants also argue that the Second Amended Complaint does not sufficiently allege that any claims for payment were "knowingly" false. (Mot. Dismiss at 15-17). Specifically, Defendants argue that Relators have not cited any regulations that are so contrary to Defendants' billing behavior as to make the claims knowingly false. (See id.). Relators respond that they have adequately pleaded that Defendants had at least constructive knowledge of the falsity of the claims. (See Response at 9-12).

For purposes of surviving a motion to dismiss, knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); see also United States ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1224 (11th Cir. 2012) (holding that general allegations of knowledge were sufficient). The knowledge requirement of the False Claims Act is that a person must have "actual knowledge of the information" in question or act in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Courts have found that even if a defendant submits a false claim, if the defendant's interpretation of a statute or regulation was reasonable, and "if there is no authoritative contrary interpretation" of the rule, the relator cannot satisfy the knowledge requirement under the False Claims Act. United States ex rel. Hixson v. Health Mgmt. Sys., Inc., 613 F.3d 1186, 1190 (8th Cir. 2010); see also United States ex rel. Streck v. Allergan, Inc., 894 F. Supp. 2d 584, 595-96 (E.D. Pa. 2012) (holding that when there was

no regulatory guidance on a particular issue, the relators did not adequately plead that the defendants had knowledge of false claims); United States v. Prabhu, 442 F. Supp. 2d 1008, 1029 (D. Nev. 2006) ("[A] Defendant does not 'knowingly' submit a 'false' claim when his conduct is consistent with a reasonable interpretation of ambiguous regulatory guidance.").[18] "The 'knowing' element of the False Claims Act was not meant to punish honest mistakes or incorrect claims submitted through mere negligence; it was meant to reach the situation where an individual has 'buried his head in the sand' and failed to make basic inquiries which would alert him that false claims are being submitted." United States ex rel. Gillespie v. Kaplan Univ., No. 09-20756-CIV, 2013 WL 3762445, at *6 (S.D. Fla. July 16, 2013) (quoting United States v. Kaman Precision Prods., Inc., No. 6:09-cv-1911-Orl-31GJK, 2011 WL 3841569 (M.D. Fla. Aug. 30, 2011)).

Relators' general allegations of knowledge are likely sufficient to meet the standard of Rule 9(b). (See, e.g., Second Am. Compl. ¶¶ 144, 145, 154-56). However, their claims fail to state knowledge for the same reasons that the claims fail to state falsity. The Second Amended Complaint does not adequately state that a false claim was submitted, and thus it does not state that Defendants knowingly submitted any false statements. Even if the claims Defendants submitted were false, Relators have not alleged that Defendants' interpretations of the regulations were unreasonable. Accordingly, Counts I through IV also fail for a lack of knowledge.

**B. Counts V and VI**

In Counts V and VI, Relators sue under the False Claims Act provision that creates liability for a person who "knowingly makes, uses, or causes to be made or used, a false

[18] The Court finds these cases, though not within the Eleventh Circuit, persuasive. Relators have not cited contrary binding precedent with respect to this issue.

record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B); accord § 68.082(2)(b), Fla. Stat. Relators do not allege false statements or claims in support of Counts V and VI, other than those alleged for Counts I through IV. Because the Court has already found that Relators failed to adequately allege the falsity of any claim, Counts V and VI also fail.

**C. Counts VII and VIII**

Finally, in Counts VII and VIII, Relators sue under the False Claims Act provision that creates liability of a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); accord § 68.082(2)(g), Fla. Stat. This subsection "is known as the 'reverse false claim' provision of the [False Claims Act] because liability results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim." Matheny, 671 F.3d at 1222. Importantly, to establish a reverse false claim cause of action, a relator must show that the defendant owed a definite and clear "obligation to pay money to the United States at the time of the allegedly false statements." Id. at 1223; United States v. Aggarwal, No. 6:03-cv-117-Orl-31KRS, 2005 WL 6011259, at *7 (M.D. Fla. Feb. 10, 2005). Congress has defined a False Claims Act "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

Defendants argue that Relators fail to allege a specific false statement or an obligation to pay money to the government at the time of any false statements. (Mot. Dismiss at 25-26). Relators respond generally that they have sufficiently pleaded the existence of false records and statements; they do not detail additional false records or statements other than those discussed above. (Response at 19). Accordingly, Counts VII and VIII must fail for the same reason as Counts I through VI—failure to plead a false statement and failure to plead knowledge on the part of Defendants. Additionally, Relators have failed to allege an obligation that is definite and clear.

## IV. Conclusion

Relators fail to state a claim upon which relief can be granted for any of their counts. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' Consolidated Motion to Dismiss Relators' Second Amended Complaint (Doc. 65) is **GRANTED**.

2. The Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Relators may file a Third Amended Complaint **on or before Monday, March 2, 2015.** Failure to file a Third Amended Complaint by this deadline will result in dismissal of the claims against Defendants with prejudice.

**DONE** and **ORDERED** in Orlando, Florida, on February 6, 2015.




Copies furnished to:
Counsel of Record
Unrepresented Parties